IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 6, 2015

## MARQUON GREEN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C14265      Roy B. Morgan, Jr., Judge**

_____

**No. W2015-00162-CCA-R3-PC  -  Filed May 4, 2016**

_____

Petitioner, Marquon L. Green, appeals the dismissal of his petition for post-conviction relief in which he alleged ineffective assistance of counsel at trial. More specifically he contends that trial counsel (1) failed to adequately communicate with him; (2) failed to file a motion to suppress his confession; (3) failed to prepare him to testify at trial; and (4) failed to adequately question and impeach the State's witnesses. Petitioner also argues that appellate counsel failed to address whether Petitioner's statement was the result of a coerced confession. After a thorough review of the record, we conclude that Petitioner has failed to show that his trial counsel or appellate counsel rendered ineffective assistance of counsel, and we accordingly affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Christie Hopper, Jackson, Tennessee, for the Appellant, Marquon L. Green.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General, James G. (Jerry) Woodall, District Attorney General; and Al Earls, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

*Background*

A Madison County grand jury returned an indictment against Petitioner charging him with aggravated robbery. Following a jury trial, he was convicted of the offense. Petitioner was sentenced to ten years as a Range I offender to be served at 85%. This

Court affirmed the conviction on appeal. *State v. Marquon L. Green*, No. W2012-01652-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App. April 29, 2014).

The following facts were set forth by this Court on direct appeal:

At trial, Courtney Echols, the victim, testified that in February 2011, she was a student at Lane College and lived in a dormitory on campus. About 11:00 a.m. on Saturday, February 5, the victim walked from her dormitory to the library. The library was closed, so the victim walked to her car in order to leave campus. While the victim was walking, she was talking on her BlackBerry telephone. However, by the time she got to her car, she had stopped talking on her phone. The victim said that she "checked her surroundings" and that a man walked up to her, pointed a gun at her chest, and demanded her purse. She described the weapon as "[a] little black gun" and said that "[t]he front part . . . was like a silver "round." The victim stated that she was scared and that the man told her, "I'm not going to shoot you. Just give me your purse." The victim gave him her Coach purse, which contained a pink Nano iPod, a Kodak digital camera, personal identification, a computer USB cord, and "sentimental items." She said that she tried to walk back to her dorm but that he told her to get into her car. She said that before she could get into her car, he told her, "I know you have a phone. Give me your phone." The victim took her phone out of her right jacket pocket, gave it to him, and tried to walk back to her dorm again. However, he told her to get into her car and walked away. The victim said that she had never seen the man prior to February 5, 2011, and that the incident lasted three to four minutes.

The victim testified that she got into her car and drove off campus to a friend's home in the Hermitage Apartments. She telephoned her mother, the police, and the college. The victim described the robber to police as five feet, three inches tall with a small build and a dark-skinned complexion. She told them he was wearing a white skull cap, a navy blue jacket with gray lining, dark pants, and white tennis shoes. She testified that the robber was standing about two feet away from her during the robbery and that "[t]he main detail that I knew it was him was his eyebrows." A couple of days after the robbery, the victim viewed a photograph array at the police department, selected the appellant's photograph, and indentified him as the robber. The victim also identified the appellant at trial as the robber.

2

On cross-examination, the victim identified the photograph array and acknowledged that only three of the six photographs showed dark-skinned men. She also acknowledged that she told police the robber had a medium, not small, build and weighed one hundred seventy-five pounds. She said that after the robbery, the appellant walked toward Middleton Street. On redirect examination, the victim testified that she had [n]o doubt" the appellant was the robber.

Officer George Massey of the Jackson Police Department (JPD) testified that on the morning of February 7, 2011, he encountered the appellant, stopped his patrol car, and got out to talk with the appellant about a matter unrelated to this case. After speaking with the appellant, Officer Massey arrested him and transported him to the Madison County Criminal Justice Center. Officer Massey notified other officers that they should speak with the appellant about this case.

Sergeant Albert Colon of the JPD testified that he investigated the robbery. Based on the victim's description of the robber, a BOLO, be-on-the-lookout, was issued. On February 7, Sergeant Colon learned that Officer Massey had arrested the appellant. Sergeant Colon prepared a photograph array containing the appellant's photograph and showed it to the victim. She identified the appellant as the robber and signed the back of his photograph. Sergeant Colon spoke with the appellant and wrote out his statement. In the statement, the appellant said he was "hanging out" at his sister's house all day on February 5, that he did not know why the victim had selected his photograph, and that "I guess I fit the description of [the] dude that robbed her." Sergeant Colon gave the appellant the opportunity to read and correct his statement, and the appellant signed the statement.

On cross-examination, defense counsel questioned Sergeant Colon about his using only three photographs of dark-skinned men in the photograph array. Sergeant Colon stated, "That's because of the lighting . . . It's three of each. That's six. We can do the photo lineups that way . . . as far as complexion . . . We go by facial features." On redirect examination, Sergeant Colon testified that on February 5, he showed the victim a "mug book" but she did not identify anyone. However, the victim identified the appellant's photograph in the array on February 7.

Investigator Aubrey Richardson of the JPD testified that on February 8, 2011, he spoke with the appellant about the robbery and took the

3

appellant's statement. Officer Richardson read the statement to the jury in which the appellant said the following:

> Saturday I took a phone Black Berry and a camera - - a Kodak camera. Saturday I had a black and gray 22 pistol and I approached her. She was talking on the phone and standing by her car. I robbed her for her phone and the camera and I ran off.
>
> I sold the camera to a female in Lincoln Courts. I sold the gun right after the robbery. And I sold the Black Berry to the Arab's on Hays Street at the store. I robbed the girl Saturday.

The appellant signed the statement.

On cross-examination, Investigator Richardson testified that he tried to convince the appellant to cooperate. Investigator Richardson said he told the appellant that by giving the statement, "the Courts would look at his cooperation in it." However, Investigator Richardson did not tell the appellant that the appellant would be charged with a lesser offense for his cooperation. At the conclusion of Investigator Richardson's testimony, the State rested its case.

The appellant testified that on February 5, 2011, he went to a barber shop to get his hair cut. After he left the barber shop, he walked through the Lane College campus. As he was walking on Lane Street to his sister's house, he saw the victim in a parking lot. The victim was standing by her car and was talking on a telephone. The appellant said that the victim was holding her purse in her hand and that he "snatched it." He said he also "got her phone from her" and ran toward Middleton Street. He said that he did not use a gun and that he did not say anything to the victim. The appellant denied telling Investigator Richardson that he had a gun and said that he signed his statement because Investigator Richardson told him that signing the statement "would be the difference between [him] getting charged with theft of property and [him] getting charged with aggravated robbery."

On cross-examination, the appellant acknowledged that he did not always tell the truth and said that he would lie to help himself, "[d]epending on how serious it is." He acknowledged that aggravated robbery was a serious charge and said that "[a] gun makes the situation serious." He acknowledged that he lied to Sergeant Colon about being at

4

his sister's house on February 5. He said he told Investigator Richardson that he took the victim's purse but did not tell the officer that he took the victim's Blackberry and Kodak camera. He said that most of the contents of the victim's purse "went into the garbage" but that he kept her telephone, camera, and money to buy some "weed." The appellant said he signed his statement to Investigator Richardson because the officer told him that was the only was he could get charged with theft of property. The appellant said that he would lie to "[a] bunch of people" but that he was not lying to the jurors because they had his life in their hands. The appellant said he stole from the victim but did not rob her. At the conclusion of the appellant's testimony, the jury convicted him as charged of aggravated robbery.

*State v. Marquon L. Green*, No. W2012-01652-CCA-R3-CD, slip op. at 1-3 (Tenn. Crim. App. April 29, 2014).

*Post-Conviction Hearing*

Petitioner testified that trial counsel "barely" communicated with him prior to trial, and she did not review the evidence against him. He said that trial counsel advised him to accept the State's plea offer because a trial might result in "more time." Petitioner testified that he asked trial counsel to file certain motions, but she would not file them because they were frivolous. He did not recall which motions that he wanted her to file. Petitioner testified that he wrote letters to trial counsel, and he wrote a letter to the Board of Professional Responsibility because he felt that trial counsel was not doing her job. Petitioner testified that trial counsel responded to one of his letters after he wrote to the board, and it contained the following:

> In your case scheduled for trial on January 31, 2012, the police have a written confession from you and a photo lineup ID from the victim. There are no motions and no defenses that I can present to the Court. You have received an offer from the District Attorney for the minimum sentence possible. As an attorney acting in your best interest, I encourage you to take the offer.

Petitioner testified that he told trial counsel that "when the investigator was going through the little statement, he told me that the statement would make the difference between me being charged with aggravated robbery and me being charged with theft of property." Petitioner claimed that he only signed the statement because of what the investigator told him. He said that trial counsel did not give him any advice concerning the statement and that she "just kept telling [him] to take the plea bargain." Petitioner

5

testified that trial counsel did not mention a motion to suppress his statement, and he did not ask her about one because he did not know what it was called. The statement was used against Petitioner at trial.

Petitioner testified that he and trial counsel did not talk about him testifying at trial. He said that trial counsel told him that she did not think he should testify. However, Petitioner felt that was the only way to "get [his] side of the story out[.]" He did not have any concerns about testifying at trial. When asked how trial counsel failed to properly advise concerning his testimony, Petitioner said:

> Because, I mean, I felt, you know, that she would have helped me, she would have let me know, like, "Man, it's on them. They got to prove it," but if they saying all this, then I ain't - - she could have helped me better, you know, help me prepare for it, you know, 'cause, man, when I got on the stand, the D.A., man, - - man, he bombarded me, man. I didn't know what I was - - you know, like if I tried to explain something, he stop me, you know. I'm trying to tell what happened, but it didn't really work, you know, 'cause he still heard - - you know, basically heard, you know, not the whole thing, you know, so I didn't know - -

Petitioner testified that trial counsel did nothing to prepare him to testify.

Petitioner testified that trial counsel failed to thoroughly cross-examine one of the investigating officers about the victim's identification because the discovery materials indicated that the victim initially could not indentify Petitioner by looking through the "mug shot" book but the materials also stated that the victim positively identified Petitioner from the book. Petitioner testified that trial counsel only questioned the investigator about the discrepancy to a "certain extent." Petitioner testified that he filed a "Motion for ineffective counseling" prior to trial, which was denied by the trial court. He and appellate counsel "somewhat" discussed his appeal.

On cross-examination, Petitioner admitted that he was at the scene and committed a theft. He also admitted that he initially lied to police and told them that he did not commit the offense. Petitioner testified the investigator wrote the second statement indicating that Petitioner committed the robbery. Petitioner then read the statement and signed it after the investigator told him to. He claimed that a portion of the second statement, indicating that Petitioner had a gun, was also a lie. Petitioner reiterated that he only signed the statement because the investigator told him that it would make "the difference between [him] [being] charged with theft of property and [him] being charged with aggravated robbery." Petitioner said that his testimony at trial was true and that his

6

statement was untrue. He claimed that he committed a theft rather than a robbery because he did not have a gun.

Petitioner agreed that a *Momon* hearing was held prior to his testimony. The trial judge asked Petitioner if he wanted to testify, and he advised Petitioner that it was his right to testify even if trial counsel advised him not to. Petitioner admitted that it was his sole decision to testify.

Trial counsel testified that she has been practicing law since 1997. She was appointed to represent Petitioner on his robbery charge, and she filed a motion for discovery. Trial counsel received the entire case file from the State which included statements by Petitioner, statements of the officers and investigator, and statements of the victim.

Trial counsel testified that Petitioner's case was a simple one because he had admitted to the offense. She said:

> The only difficulty I had in dealing with [Petitioner] is that he felt that the offers that were coming from the District Attorney's office were too harsh. He felt that they should be willing to reduce some of the charges. He thought that a probationary sentence or a sentence including diversion would be appropriate, and [Petitioner] and I had very - - well I had a very difficult time trying to get [Petitioner] to understand the severity of the situation that he was in.

Trial counsel testified that a plea negotiation in Petitioner's case was complex because he also had a separate rape and kidnapping case. She said that the plea offer was a "package deal." Petitioner was not offered the opportunity to plead guilty solely to the aggravated robbery.

Trial counsel did not feel that it was necessary to file any motions in Petitioner's case other than the discovery motion. She said that Petitioner asked her to file a motion for a change of venue. Trial counsel testified that she researched the issue and did not feel that there were any grounds to go before the Court and ask for the change of venue. Concerning a motion to suppress, trial counsel testified:

> [Petitioner] never asked me to suppress his statement. He always - - He even admitted to me he did it. The first time I've heard about suppressing a statement is in this hearing today. When he and I had conversations, - - In fact, one of these issues we had, [Petitioner] on numerous occasions when I would go to the jail to visit with him would

7

get up and walk out and demand to be taken back and put back in his cell. He - - I guess, you know, it was one of those situations, you don't like the message, so you want to shoot the messenger. He wrote me several letters indicating that I wasn't doing my job because I could not get him probation. One of them states that he'll serve two 11/29s, he'll pay restitution, he'll do 12 years intensive probation, drug rehab, participate in the A&D assessment, 300 hours of community service. He wanted in the other case, the aggravated kidnapping, aggravated rape, all of that dismissed, and when I couldn't accomplish those things for [Petitioner], he would become very angry and refused to cooperate with me.

Trial counsel admitted that she wrote the letter to Petitioner about accepting a plea offer. However, she said that it was his choice as to what he wanted to do.

Trial counsel testified that she met with Petitioner on numerous occasions and attempted to discuss his case in detail with him. However, Petitioner "chose on 95 percent of those occasions to leave the room." Trial counsel testified: "I can't force a client to sit and listen. All I can do is make myself available." Trial counsel testified that she did not receive numerous letters from Petitioner. She received one letter and responded to it. Trial counsel testified that Petitioner filed a complaint against her with the Consumer Assistance Program, and she responded to the complaint.

Trial counsel testified that the victim initially could not identify Petitioner but then she was able to identify him. Although she did not specifically recall questioning the investigator at trial about the identification, the record reflected that she did so. When asked if it would have helped Petitioner's case to show that the investigator said that the victim identified Petitioner at the first lineup when that wasn't the case, trial counsel said:

What would have helped my case is if my client had exercised his constitutional right to not ma[k]e a statement to begin with. I was left in a position of trying to clean up the mess afterwards, and that's a very difficult thing to do as a defense attorney. Once a client has made a statement and signed a statement, your only option as the defense attorney at trial is to do one of two things, show that your client was extremely confused or at one point was lying. Once you point out to a jury that your client is a liar, then it becomes very difficult to convince them when he's telling the truth. So it wasn't so much what [the victim] said or what [the victim] identified, it was that he had made a statement and then wanted to retract it, and in the jury's mind, that leaves the question of, [w]hen do I believe him and when do I not? And I tried to

8

explain to him prior to trial that is exactly what was going to happen if he chose to take the stand.

Trial counsel testified that Petitioner told her that his statement was true. He told her that he took that victim's property and what he did with it. Therefore, trial counsel testified that she could not "ethically file a motion to suppress."

*Analysis*

Petitioner contends that his trial counsel provided ineffective assistance because trial counsel (1) failed to adequately communicate with him; (2) failed to file a motion to suppress his confession; (3) failed to prepare him to testify at trial; and (4) failed to adequately question and impeach the State's witnesses. Petitioner also argues that appellate counsel failed to address whether Petitioner's statement was the result of a coerced confession. We disagree.

In a post-conviction proceeding, the burden is on the Petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id*. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id*. at 457.

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 205, 280 L. Ed. 2d 674 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." *Id*. at 369 (citing *Strickland*,

466 U.S. at 688; *Baxter*, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. at 370 (quoting *Strickland*, 466 U.S. at 694).

Following the evidentiary hearing, in a written order denying relief, the post-conviction court concluded that Petitioner had failed to prove by clear and convincing evidence that trial counsel's or appellate counsel's performance was deficient or that Petitioner was prejudiced by any alleged deficiency. At the conclusion of the post-conviction hearing, the court found, in part,

> Part of the Court's job is to determine the credibility of those witnesses that testified here today also and what weight to give their testimony, and, of course, [Petitioner] has testified and [trial counsel] testified, and there would be some issues raised as to [Petitioner's] credibility because of the prior statements made and given [that] he claims [are] not true and prior criminal record which is part of the criminal file, which some of the convictions go to truthfulness. But again, I emphasize credibility of those testifying are an issue for the Court to determine. I'm weighing that credibility today of those witnesses as I make my determinations and final ruling.

> The attorney did as she's testified, filed her motion for discovery and explained how that policy works with our District Attorney General's office. The Defendant and Petitioner [ ] says he had asked for certain motions to be filed but was not specific really about any motions except the question raised on the motion to suppress his statement.

> I do note and clarify for the record, Petitioner today [sic] did file a written motion as far as the claims against counsel in this Court. It was filed on or about December the 19th of 2011, and I heard that motion in open court on January 9th, 2012. I do recall hearing from [Petitioner] as I always would, [Petitioner] and from counsel, and denied that written motion regarding counsel. I have again reviewed that written motion as part of my considerations today. No specifics that I can find in that handwritten motion about motions being filed, and any allegations that were raised we discussed, and after hearing from counsel and Petitioner, I denied the motion. So that was a matter of record and was ruled upon by the Court. Again, no other specific motions other than the motion to suppress.

10

The attorney says in her sworn testimony, again where I have to give credibility greater to her, is that there was no question by [Petitioner] about filing a motion to suppress. He never raised that issue. And she's testified from her professional perspective in representing the Petitioner why she didn't file it.

I do note that [Petitioner] chose to testify at trial, and I questioned [Petitioner] outside the presence of the jury and went over the litany of questions that I always do regarding him testifying or not testifying and his rights, and it was his decision, and if he chose to testify, no one could prevent him from testifying, for example. And if he chose not to testify, no one could make him testify. Went through the whole question list with him, and he, of course, chose to testify. When he testified, [Petitioner], that day before the jury, he took the position, "Yes, I was there. I took her purse." He was so specific, "I took her purse from her hand." He gave those details. He did indicate that he didn't have a gun, he got her phone from her hand, but he claimed when he gave that statement before the jury in his sworn testimony he didn't have a gun. So he pointed out in his own testimony what he felt were the differences in his statement and his live testimony as to what his position was on the truth. He had that opportunity, it was heard by the jury. He even told the jury that the only reason he gave that statement was it would be the difference in theft of property versus aggravated robbery. He explained that to the jury when he testified [. . .].

When it came to the statement, of course, there is - - the witnesses testified, Investigator Richardson, and he went through - - and Sergeant Colon, and they went through the prior statements of [Petitioner] which he later changed, they weren't true, and then he went through before the jury the testimony of [Petitioner]. I think it was Exhibit 3 where he gave a statement, where he admitted the taking of the property, admitted to the use of the gun, I believe it was a .22 caliber pistol, and the Miranda form was submitted. That was an exhibit. But the officer laid the foundation, the groundwork. Again, it was a credibility issue for the jury, and [Petitioner], now Petitioner's testimony, and those investigators and their testimony, and the jury had to determine who was telling the truth. That's a jury issue at that point in time when you're in the course of trial, the credibility of the witnesses.

11

There are no missing witnesses. The Petitioner testified today there was no one else he would have brought into trial, that was quite clear, because he's admitted he was there and he took the property.

I find in the record that it was very clear during the course of the trial that Sergeant Colon was cross-examined by [trial counsel], [. . .], regarding the color or darkness of the skin of individuals in the photo lineup; only three were dark-skinned. That was presented through cross-examination. She was also questioning Sergeant Colon about the possibility of this victim going to the law enforcement building and looking through a mug book on an earlier occasion and not identifying [Petitioner] [  ]. And then, of course, on Redirect it was very clear that there was no evidence or nobody was sure whether [Petitioner's] photo would have been in any mug book she would have looked at. So again, all these issues were brought out during the course of trial through the assistance of counsel, [trial counsel]. I remember the testimony.

And [trial counsel] has testified that she had numerous, quote numerous, end quote, meetings with Petitioner. And Petitioner by his volition at some point during those meetings would not want to talk about his case with her and would get up and walk away.

Petitioner did have some strategy decisions to make, one of which was to testify.

The Court finds in reviewing the entire record and for the reasons stated, having reviewed each and every issue raised in the original petition filed and any amendments thereto, that the Petitioner has failed to carry the burden of proof by clear and convincing evidence on issues raised as to the ineffective assistance of counsel.

We conclude that the evidence does not preponderate against the post-conviction court's findings and conclusions. First, Petitioner has not demonstrated that trial counsel failed to communicate with him. Trial counsel testified that she met with Petitioner on numerous occasions and attempted to discuss Petitioner's case in detail with him. She said that on "95 percent of those occasions" Petitioner chose to leave the room. Therefore, any lack of communication was caused by Petitioner himself. Trial counsel testified: "I can't force a client to sit and listen. All I can do is make myself available." We find that is exactly what trial counsel did in this case. She made herself available to Petitioner, and he chose not to cooperate because he did not get what he wanted. Trial

12

counsel also testified that she received one letter from Petitioner to which she responded. Petitioner has failed to carry his burden of proof as to this claim.

Next, Petitioner claims that trial counsel's performance was deficient because she failed to file a motion to suppress his confession because it was coerced. We disagree. Trial counsel testified that Petitioner never asked her to file a motion to suppress, and Petitioner did not present any clear and convincing proof at the post-conviction hearing that the statement was coerced other than his testimony that the investigator told Petitioner that if he signed the statement it would make "the difference between [Petitioner] [being] charged with theft of property and [Petitioner] being charged with aggravated robbery." On direct appeal, this Court noted that Investigator Aubrey Richardson of the Jackson Police Department testified that he did not tell Petitioner that Petitioner would be charged with a lesser offense for his cooperation. *State v. Marquon L. Green*, No. W2012-01652-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App. April 29, 2014).

Trial counsel testified that Petitioner admitted to her that he committed the offense and that what he told police was the truth. The post-conviction court also noted that a signed *Miranda* form was presented at trial. Trial counsel testified that she considered filing a motion to suppress but she could not see any ethical way to file the motion. As pointed out by the State, even if Investigator Richardson had promised Petitioner that he would be charged with a lesser offense for his cooperation, "[p]romises of leniency by state officers do not render subsequent confessions involuntary *per se*." *State v. Smith*, 933 S.W.2d 450, 455 (Tenn. 1996). Petitioner has failed to carry his burden of proof as to this claim.

Third, Petitioner argues that trial counsel failed to "discuss his right to testify at trial, the consequences of such testimony, and to adequately prepare the Petitioner for testimony." Trial counsel testified that she recommended that Petitioner not testify, but he insisted on doing so. Petitioner acknowledged at the post-conviction hearing that the trial court questioned him about his decision to testify, and the court advised him that it was his right to testify even if trial counsel advised him not to. Petitioner admitted that it was his sole decision to testify because he wanted to tell his side of the story. The post-conviction court also found that Petitioner was properly advised of his rights pursuant to a *Momon* hearing at trial. At the post-conviction hearing, Petitioner admitted that he was at the scene and committed a theft. At trial, Petitioner testified that he took the victim's purse and her phone, but he denied telling Investigator Richardson that he had a gun. On cross-examination, Petitioner admitted that he did not always tell the truth and that he would lie to help himself, "[d]epending on how serious it is." He acknowledged that aggravated robbery was a serious charge and that "[a] gun makes the situation serious." At trial, Petitioner also admitted that he lied to Sergeant Colon about being at his sister's

13

house. *State v. Marquon L. Green*, slip op. at 2, 4. The jury chose to disbelieve Petitioner's testimony about the gun.

Petitioner has not alleged how trial counsel should have prepared him to testify at trial or that his testimony at trial would have been any different and affected the outcome of the trial. Petitioner had already signed a confession admitting to the offense, and the jury was aware that Petitioner lied in the first statement that he gave to Sergeant Alberto Colon. Petitioner insisted on testifying against trial counsel's advice, and he was fully advised of his rights by the trial court. Petitioner failed to carry his burden of proof as to this claim.

Fourth, Petitioner argues that trial counsel failed to "adequately question and impeach the State's witnesses." He notes that the victim initially did not identify Petitioner when she looked through the "mug book" and that there was later testimony that she identified him the first time that she saw the picture. Petitioner also asserts that trial counsel did not adequately question the investigator to show that the victim was not initially able to identify Petitioner. Petitioner did not present the testimony of the investigator at the post-conviction hearing. Also, as pointed out by the post-conviction court, Petitioner did not present the book of mug shots at the post-conviction hearing to show that it even contained Petitioner's photograph. At trial, trial counsel questioned the victim about her identification of Petitioner, and trial counsel also questioned Sergeant Colon about the identification. On redirect examination, Sergeant Colon testified that he showed the victim a "mug book" and that she did not identify anyone. He later showed her a photograph array, and she identified Petitioner. The victim ultimately testified that she had no doubt that Petitioner was the person who robbed her. *State v. Marquon L. Green*, slip op. at 2-3.

Petitioner has not in any way shown that he was prejudiced by trial counsel's performance as to this claim. It was brought out at trial that the victim did not initially identify Petitioner from the book of mug shots. Moreover, as pointed out by the State, there was no question that Petitioner was the perpetrator of the offense. Petitioner admitted at trial that he was at the scene and took the victim's purse and phone. His only point of contention was that the offense was a theft rather than a robbery because he claimed that he did not have a gun. Petitioner has not demonstrated or even provided an argument as to how any additional cross-examination of the state's witnesses by trial counsel would have affected the trial in this case. Again, Petitioner failed to carry his burden of proof as to this claim.

Finally, Petitioner asserts that appellate counsel was ineffective for failing to raise the issue of a coerced confession on appeal. The only evidence Petitioner presented on this claim was that he told appellate counsel about his confession and that appellate

counsel advised him that the issue needed to be raised in a post-conviction proceeding. As noted by the State, it is well-settled that an objection to the admissibility of a confession is waived if not challenged before trial. *State v. Foust*, 625 S.W.2d 287, 289 (Tenn. Crim. App. 1981); Tenn. R. Crim. P. 12(b)(2)(C), (f). Moreover, Petitioner has not demonstrated that the outcome of his appeal would have been any different if the issue had been raised. As we have previously discussed, Petitioner admitted to taking the victim's purse and phone. The only difference in his testimony and his confession was the use of a gun to commit the offense. Trial counsel testified that she considered filing a motion to suppress but she did not see any ethical way to file the motion. Petitioner has failed to prove this claim by clear and convincing evidence.

Petitioner has failed to establish that trial counsel provided ineffective assistance. For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

15